**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DIAHANNE MCCLELLAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07-CV-36-TCK-FHM** |
| | ) | |
| **(1) BOARD OF COUNTY COMMISSIONERS** | ) | |
| **OF TULSA COUNTY;** | ) | |
| **(2) TULSA PUBLIC SCHOOLS; and** | ) | |
| **(3) JUVENILE BUREAU OF DISTRICT** | ) | |
| **COURT OF TULSA COUNTY;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court is Motion to Dismiss by Juvenile Bureau of the District Court of Tulsa

County ("Motion to Dismiss") (Doc. 64).

**I.      Facts and Procedural History**

On January 7, 2007, Plaintiff Dihanne McClellan ("Plaintiff"), an African-American female,

filed a Complaint naming two Defendants: (1) Juvenile Bureau of District Court of Tulsa County

("Tulsa Juvenile Bureau"); and (2) Tulsa Public Schools ("TPS"). Plaintiff identified Tulsa Juvenile

Bureau as her former employer and alleged that Tulsa Juvenile Bureau wrongfully terminated her

employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C.

§ 1981, and that TPS wrongfully refused to hire and/or interview her, in violation of Title VII and

42 U.S.C. § 1981.

On January 17, 2007, Plaintiff served Tulsa Juvenile Bureau with the Complaint at 315 S.

Gilcrease Road ("Gilcrease address") to the attention of "Brent Wolf [sic]" ("Wolfe"), who held the

position of "director" of Tulsa Juvenile Bureau.  (*See* Doc. 3.)[1]  On January 19, 2007, Plaintiff filed

a return of service in the form of a certified mail receipt addressed to Wolfe at the Gilcrease address,

which contains an illegible signature and is dated January 17, 2007.  (*See* Doc. 5.)  Tulsa Juvenile

Bureau did not file an answer, a responsive pleading, or otherwise enter an appearance within the

time provided in Federal Rule of Civil Procedure 12(a) ("Rule 12(a)").  Plaintiff did not move for

an entry of default or default judgment.

On April 10, 2007, Plaintiff filed an Amended Complaint ("First Amended Complaint"),

dropping Tulsa Juvenile Bureau as a Defendant and naming in its place the Board of County

Commissioners of Tulsa County ("Tulsa County").[2]  In the First Amended Complaint, Plaintiff

identified Tulsa County as her employer and alleged that Tulsa County wrongfully terminated her

employment.  The allegations against TPS remained the same.  On April 26, 2007, the Court entered

a scheduling order.  (*See* Doc. 17.)

On June 28, 2007, Tulsa County filed a motion to dismiss, essentially arguing that it was not

Plaintiff's employer under Title VII.  Tulsa County represented that it, Tulsa Juvenile Bureau, and

the State of Oklahoma had "been in legal disagreement concerning the identity (ies) of the employer

for the personnel at the [Tulsa Juvenile Bureau] since 2002 when the first complaint of

discrimination was lodged against [Tulsa Juvenile Bureau]."  (Tulsa County's Mot. to Dismiss First

Am. Compl. 12.)  On July 11, 2007, Plaintiff filed an unopposed motion to amend her Complaint

for a second time.  Plaintiff contended that, in light of Tulsa County's denial that it was Plaintiff's

---

[1] "Director" of a juvenile bureau is a position created and defined by Oklahoma statutes. *See* Okla. Stat. tit. 10A, § 2-4-102.

[2] Plaintiff did not seek leave of Court to file the Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a); however, no party objected to amendment.

"employer" and assertion of a "legal disagreement" among various Oklahoma governmental entities on this issue, "[i]t is highly disputed and yet to be determined which entity was specifically in charge of Plaintiff's employment." (Pl.'s Mot. for Leave to Amend Compl. 1-2.) The Court granted the motion to amend.

On July 26, 2007, Plaintiff filed a Second Amended Complaint (Doc. 29), re-naming Tulsa Juvenile Bureau as a Defendant and naming, for the first time, Tulsa County Juvenile Justice Trust Authority ("Tulsa Juvenile Trust") and State of Oklahoma, *ex rel.* the District Judges of the Fourteenth Judicial District ("State") as additional Defendants to the wrongful termination claim. On July 26, 2007, Tulsa County filed a motion to dismiss the Second Amended Complaint, making similar or identical arguments to those in its motion to dismiss the First Amended Complaint. Specifically, Tulsa County moved to dismiss on three grounds: (1) Plaintiff failed to exhaust administrative remedies because she named only Tulsa Juvenile Bureau and failed to name Tulsa County in her charge filed with the Equal Employment Opportunity Commission ("EEOC"); (2) Tulsa County is not Plaintiff's "employer" for Title VII purposes; and (3) assuming Tulsa County is adjudicated as the "employer" of Tulsa Juvenile Bureau, "its status as employer has no legal efficacy" because the statutes creating such relationship are in violation of the Separation of Powers Clause, set forth at Article 4, Section 1 of the Oklahoma Constitution.

On August 29, 2007, a new summons and the Second Amended Complaint were issued to Tulsa Juvenile Bureau at the Tulsa County Courthouse, 500 S. Denver Ave., Rm. 513 ("Tulsa County Courthouse") to the attention of Judge Deborah Shallcross ("Judge Shallcross"). (*See* Doc. 35.) Thus, Plaintiff served Tulsa Juvenile Bureau with the Second Amended Complaint by serving Judge Shallcross at the Tulsa County Courthouse, rather than serving Wolfe at the Gilcrease address,

3

as she had done with the original Complaint.  Plaintiff did not promptly file any proof of service as to Tulsa Juvenile Bureau with regard to the Second Amended Complaint,[3] and Tulsa Juvenile Bureau failed to file a responsive pleading or otherwise enter an appearance within the time required by Rule 12.

On September 21 and 25, 2007, Tulsa Juvenile Trust and State entered appearances and moved to dismiss all claims against them. (*See* Docs. 37-41.)  On October 16, 2007, Plaintiff voluntarily dismissed without prejudice her claims against Tulsa Juvenile Trust and State.  Thus, as of October 16, 2007, the remaining Defendants were Tulsa County, Tulsa Juvenile Bureau, and TPS; however, Tulsa Juvenile Bureau had not entered an appearance or otherwise participated in the litigation.

On April 23, 2008, the Court entered an Order denying Tulsa County's motion to dismiss. The Court held: (1) the EEOC exhaustion analysis was intertwined with a substantive aspect of Plaintiff's Title VII claim – namely, whether Tulsa County does or does not qualify as a Title VII "employer" of Plaintiff – and was not the proper subject of a motion to dismiss; (2) the "joint employer" analysis, even assuming it presented a jurisdictional issue, was also intertwined with the merits of Plaintiff's Title VII case – namely, which of the remaining entities, if any, were her employer for purposes of Title VII – and was not the proper subject of a motion to dismiss; and (3) it was premature to consider the constitutionality of any state statutes.  On May 21, 2008, the Court

---

[3] In an April 23, 2008 Order, the Court stated in a footnote: "On January 19, 2007, Plaintiff filed proof of service upon [Tulsa] Juvenile Bureau.  However, [Tulsa] Juvenile Bureau has failed to enter an appearance or file an answer." (4/23/08 Order at 3 n.1.)  This footnote was in error.  The proof of service referenced by the Court related to the original Complaint and not the Second Amended Complaint.  As explained below, proof of service related to the Second Amended Complaint was not filed until October 14, 2008.

4

entered a schedule.  Plaintiff, Tulsa County, and TPS proceeded with discovery in compliance with the scheduling order.

Approximately five months later, on October 14, 2008, Plaintiff filed a "proof of service" upon Tulsa Juvenile Bureau, which consisted of a certified mail receipt addressed to Tulsa Juvenile Bureau at the Tulsa County Courthouse to the attention of Judge Shallcross.  This receipt reflects a stamped signature of B.K. Ichell.  It contains the outer rim of what appears to be a date stamp but does not contain any actual date stamp.  (*See* Doc. 57.)[4]  On November 21, 2008, Pat Cremin and Johnathan Rogers, of the private law firm of Hall, Estill, Hardwick, Gable, Golden & Nelson ("Hall Estill"), entered their appearances on behalf of Tulsa Juvenile Bureau.[5]

On November 26, 2008, Tulsa Juvenile Bureau filed the Motion to Dismiss currently pending before the Court.  Tulsa Juvenile Bureau moved to dismiss all claims against it on two grounds: (1) Plaintiff has failed to state a claim for relief because Tulsa Juvenile Bureau lacks capacity to sue or be sued under Federal Rule of Civil Procedure 17(b) ("Rule 17(b)"); and (2) Plaintiff failed to effect sufficient service of process of the Second Amended Complaint upon Tulsa Juvenile Bureau.  The first argument is made pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"),[6] and

---

[4]  This same certified mail receipt is attached as Exhibit E to Plaintiff's Response to Juvenile Bureau's Motion to Dismiss.  (*See* Ex. E to Doc. 66).  However, on the version attached as Exhibit E, there is a clearly legible date stamp of September 4, 2007.  Thus, the record is not entirely clear as to when B.K. Ichell accepted service of the Second Amended Complaint.

[5]  Tulsa Juvenile Bureau has not explained what event caused it to receive actual notice of the Second Amended Complaint or to finally enter an appearance in the litigation.

[6]  Rule 17's requirements are not jurisdictional, *see Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994), and a motion to dismiss based on lack of capacity to sue and be sued is properly analyzed pursuant to Rule 12(b)(6), *see Michaelesco v. Estate of Richard*, 288 B.R. 646, 653 n. 7 (D. Conn. 2003) ("Even though the defense of lack of capacity is not expressly mentioned in Fed. R. Civ. P. 12(b), . . . treatment of [a]

the second argument is made pursuant to Federal Rule of Civil Procedure 12(b)(5) ("Rule 12(b)(5)").

The Court will address each argument in turn.

## II.     Tulsa Juvenile Bureau's Capacity to Be Sued

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'"  *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974).  Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.  In conducting this inquiry, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Id.*; *see also Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted).

---

capacity argument as one made under Fed. R. Civ. P. 12(b)(6) . . . follows a traditional practice.").

Rule 17(b) governs a party's capacity to sue or be sued. Pursuant to Rule 17(b)(3), the legal capacity of a governmental entity is determined "by the law of the state where the court is located." Accordingly, Tulsa Juvenile Bureau's capacity to sue or be sued in federal court is governed by Oklahoma law. *See Noland v. Garfield County Det. Ctr.*, No. 07-494-F, 2008 WL 4130309, at * 2 (W.D. Okla. Aug. 29, 2008) (unpublished) (applying Oklahoma law to determine if county jail and county sheriff's department had legal capacity to be sued under Rule 17(b)).

Chapter 4 of the Oklahoma Juvenile Code ("OJC"), entitled "Juvenile Bureaus," creates entities known as juvenile bureaus in all counties in Oklahoma having a population of 80,000 or more. Okla. Stat. tit. 10A, § 2-4-101 ("In each county having a population of eighty thousand (80,000) or more, as shown by the last preceding Federal Decennial Census, there is created a juvenile bureau . . . .").[7] Juvenile bureaus consist of a "director" and "other personnel," *see id.* § 2-4-102, whose duties include "investigat[ing] and report[ing] on all cases that are pending in the Juvenile Docket of the district court, and to investigate and report on all cases of delinquent children and children in need of supervision, residing or being in the county," *see id.* § 2-4-104.[8]  In the statutory scheme creating juvenile bureaus, there is no "sue or be sued" clause. Such a clause would have clearly indicated that juvenile bureaus have capacity to sue and be sued. *See, e.g.*, Okla. Stat. tit. 19, § 1 (applying to counties) ("Each organized county within the state shall be a body corporate and politic and as such shall be empowered . . . [t]o sue and be sued . . . ."); Okla. Stat. tit. 70, § 5-

---

[7] The OJC was revised and renumbered, effective May 21, 2009 ("5/21/09 Amendments"). The OJC was formerly located in title 10 of the Oklahoma Statutes and contained different section numbers. Where necessary, this Opinion and Order explains prior versions of or amendments to the OJC that were in place at relevant times during this lawsuit.

[8] Plaintiff in this case was not the "director" of Tulsa Juvenile Bureau and was therefore "other personnel."

105 (applying to school districts) ("Every school district shall be a body corporate and . . . may sue and be sued . . . ."). Tulsa Juvenile Bureau argues that the absence of such a provision indicates that Oklahoma juvenile bureaus lack capacity to be sued. *See generally Reid v. Hamby*, No. 95-7142, 1997 WL 537909, at * 6 (10th Cir. Sept. 2, 1997) (unpublished) (affirming district court's dismissal of claims against county sheriff's department pursuant to Rule 17(b) because Oklahoma law indicated sheriff's departments lacked capacity to be sued and that county was proper entity to sue for actions of sheriff's department); *Noland*, 2008 WL 4130309, at * 2 (concluding that county jails and county sheriff's departments in Oklahoma lack capacity to be sued and that proper defendant is the county).

In addition to the lack of a sue and be sued clause Tulsa Juvenile Bureau further argues that recent developments in Oklahoma law establish that juvenile bureaus lack capacity to be sued. These two recent developments are:  (1) certain amendments to the OJC, which became effective November 1, 2008 ("11/1/08 Amendments"); and (2) an opinion of the Oklahoma Attorney General, 2008 OK AG 30, which was issued November 3, 2008 ("11/3/08 AG Opinion").  Following the 11/1/08 Amendments, the statute creating juvenile bureaus provides: "For *legal representation purposes* only, the juvenile bureau and all facilities operated by the juvenile bureau are designated as a department of the county."  Okla. Stat. tit. 10A, § 2-4-101 (emphasis added).  In addition, another relevant provision was amended to provide:

> Except in instances where it is entitled to representation because of insurance coverage, *the district attorney of the county in which the juvenile bureau is located shall represent the juvenile bureau and any employee who was acting in his or her official capacity at the time of the act or omission complained of in any lawsuit.* If the district attorney has a conflict of interest or otherwise declines to represent the juvenile bureau or its employees, the county commissioners may request the assistance of the Attorney General or authorize the employment of private counsel *for the juvenile bureau* and its employees in their official capacity.

8

*Id.* § 2-4-107(D)(4) (emphases added).[9]

The 11/3/08 AG Opinion, also relied upon by Tulsa Juvenile Bureau in support of its position, answered the following question posed by Tulsa County District Attorney Tim Harris: "The Oklahoma Legislature has created a juvenile bureau in each county having a population of eighty thousand (80,000) or more. For purposes of employment liability, are these juvenile bureaus and their employees State or county employees?" 2008 OK AG 30, ¶ 1.  In providing its answer, the Attorney General stated the following regarding the meaning of the "legal representation" aspects of the 11/1/08 Amendments:

> The district attorney of the county in which the juvenile bureau is located *is statutorily required to represent the juvenile bureau* and any employee who is acting in his or her official capacity at the time of the act or omission *complained of in any lawsuit.*

2008 OK AG 30, ¶ 29 (emphasis added).  Tulsa Juvenile Bureau contends that these developments show that the county in which the relevant juvenile bureau sits is the proper-party defendant in all cases involving actions of a juvenile bureau and/or its employees acting in an official capacity and that the juvenile bureaus themselves lack capacity to be sued.

The Court rejects Tulsa Juvenile Bureau's arguments and concludes that Oklahoma juvenile bureaus have the capacity to sue and be sued.  Although there is not an express "sue and be sued" provision in the OJC, there is an express designation that the relevant county must "represent the juvenile bureau . . . in any lawsuit." Okla. Stat. tit. 10A, § 2-4-107(D)(4).  If juvenile bureaus lacked capacity to sue and be sued, there would be no reason for this clarification or for the 11/1/08 Amendments regarding the "legal representation" of juvenile bureaus.  Were the Court to accept

---

[9]  The 5/21/09 Amendments had no impact on these provisions.

Tulsa Juvenile Bureau's argument, a juvenile bureau or a juvenile bureau employee acting in an official capacity would therefore never be a proper party to a lawsuit and would never be in need of "legal representation." Instead, the proper-party defendant would always be the county, and the county would obviously be responsible for providing legal representation for itself. Had the Oklahoma legislature intended to clarify that juvenile bureaus lacked capacity to be sued, it could have done so. Instead, it clarified what entity is responsible for providing legal representation to a juvenile bureau in the event of a lawsuit. It even provided guidance on what a county should do in the event it had a conflict of interest with its juvenile bureau – namely, request assistance from the State or hire private counsel. *See* Okla. Stat. tit. 10A § 2-4-107(D)(4).[10] Thus, the 11/1/08 Amendments actually indicate that an Oklahoma juvenile bureau has capacity to sue and be sued and that the relevant county must provide legal representation to the juvenile bureau, either through the district attorney's office or other means, in the event of a lawsuit.[11]

The 11/3/08 AG Opinion also supports the Court's conclusion that juvenile bureaus have capacity to be sued because it concludes that any "judgment" entered against a juvenile bureau must be paid by the county. *See* 2003 OK AG, ¶¶ 20-22 (reasoning that, pursuant to Oklahoma statute, counties are responsible for "all expenses" of the juvenile bureau and that such expenses include the costs of litigation and any judgments entered against a juvenile bureau). Simply by referencing "judgments against the juvenile bureau," the 11/3/08 AG Opinion indicates that juvenile bureaus are

---

[10] Hall Estill, a private law firm, is representing Tulsa Juvenile Bureau in this case. The Court is without information regarding what entity hired Hall Estill. However, pursuant to the 11/1/08 Amendments, which took effect prior to Hall Estill's entry of appearance, it is possible that Tulsa County hired Hall Estill in recognition of a conflict of interest present in this case.

[11] The parties did not cite, and the Court was unable to locate, any relevant legislative history surrounding the 11/1/08 Amendments.

subject to suit.  If they were not, there would never be a "judgment" against them, and there would be no need to clarify what entity is responsible for such a judgment.

Further, as a practical matter, were the Court to hold that Oklahoma juvenile bureaus lack capacity to be sued, Plaintiff and other plaintiffs asserting Title VII claims may be left without a remedy for wrongful employment actions committed by juvenile bureaus.  For example, in this case, Tulsa County argues it is not Plaintiff's employer for purposes of Title VII.  In its motion to dismiss the First Amended Complaint, Tulsa County pointed directly to Tulsa Juvenile Bureau as Plaintiff's employer.  In its motion for summary judgment, which is still pending, Tulsa County continues to argue it is not Plaintiff's employer, although Tulsa County does not directly declare what entity (between Tulsa Juvenile Bureau and State) actually *is* Plaintiff's employer.  (*See* Tulsa County's Mot. for Summ. J. 12 (arguing that Tulsa County lacked control over Plaintiff's hiring, supervision, conditions of employment, and termination of employment and that such power was possessed instead by "the judge of the Juvenile Division" pursuant to statute); *id.* 16-17 (arguing that Tulsa County cannot be considered Plaintiff's employer because Wolfe terminated her and Plaintiff believed her supervisors to be Judge Shallcross, Mary Fitzgerald, and Wolfe).)[12]  If: (1) Tulsa

---

[12]  The 11/3/08 AG Opinion left open the possibility that an entity other than or in addition to the county may be considered an "employer" of a juvenile bureau for purposes of employment liability:

> You ask whether juvenile bureaus and their employees are State or county employees for purposes of employment liability. You indicate this encompasses factors such as whether administrative remedies should be exhausted, the source of revenue used to satisfy potential judgments and who is to provide legal representation to the juvenile bureaus. *Because the subject of "employment liability" is broad and specific tests have been articulated for determining liability under certain circumstances, we cannot provide an answer which will govern every possible scenario that may arise in determining employment liability. The existence of an employment relationship does not necessarily answer the specific questions you pose.  See Anglin v. City of*

County successfully defended the case on grounds that it is not an "employer;" and (2) Tulsa County

must be sued in lieu of Tulsa Juvenile Bureau because Tulsa Juvenile Bureau lacks capacity to be

sued, then Tulsa County could avoid a judgment against it and also avoid a judgment against

Juvenile Bureau.  Plaintiff would, in effect, be left without any remedy.  The Court does not believe

this was the result intended by the Oklahoma Legislature.  Instead, this case seems to present the

scenario contemplated by § 2-4-107(D)(4), in which a juvenile bureau is properly sued, but, due to

the county's conflict of interest, the county must hire private counsel to represent the juvenile

bureau.

As an issue of first impression, the Court holds that juvenile bureaus created by Oklahoma

law have capacity to sue and be sued for purposes of Federal Rule of Civil Procedure 17(b)(3).

Oklahoma law provides that a juvenile bureau is a department of the county in which it sits "for

legal *representation* purposes only."  Contrary to Tulsa Juvenile Bureau's argument, this does not

lead to the conclusion that a juvenile bureau is never subject to suit.  Instead, the provision clarifies

---

*Aspen, Colo.*, 552 F. Supp. 2d 1205, 1216-17 (D. Colo. 2008) (holding that the county was jointly liable with the county sheriff in civil rights action for the misdeeds of sheriffs and their employees when the sheriff set official policy for the county, even though the county and the two sheriffs were separate entities and employees were not county employees). *We can state, however, that under general principles juvenile bureaus are part of county government, and juvenile bureaus and their employees are considered to be employees of the county.*

2008 OK AG 30, ¶¶ 1-2 (citation omitted and emphasis added); *see also id.* n.6 ("Courts have adopted specific tests for determining employment relationships in particular fact situations such as Title VII of the Civil Rights Act, Eleventh Amendment immunity, state whistleblower statutes, etc. We recognize that courts, upon application of these tests to the specific facts of individual cases, may render decisions contrary to the general conclusion [that juvenile bureau employees are county employees] we have made in this Opinion."); *id.* ¶ 28 (explaining that 11/1/08 Amendments "require[] representation by the district attorney of the county in which the juvenile bureau is located *regardless of whether juvenile bureaus and their employees are considered to be State or county entities*) (emphasis added).

that, when the juvenile bureau is in fact sued, it is considered a department of the county for "legal *representation* purposes only." Therefore, the Court denies Tulsa Juvenile Bureau's Rule 12(b)(6) motion regarding its lack of capacity to be sued under Rule 17(b).

## III.    Service of Process

Tulsa Juvenile Bureau also moved to dismiss all claims against it based on insufficient service of process pursuant to Rule 12(b)(5). "A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1353 (3d ed. 2004) [hereinafter *Federal Practice & Procedure*]. For example, "[a]n appropriate objection under Rule 12(b)(5) would be the nonreceipt by the defendant of a summons, the absence of an agency relationship between the recipient of process and the defendant, a lack of notice to the defendant when service is delivered to a third party under a federal or state statute, or any other failure to comply with the procedural requirements in the applicable service provisions." *Id.* (footnotes omitted). "In opposing a motion to dismiss for insufficient service of process, plaintiff bears the burden to make a prima facie case that he has satisfied statutory and due process requirements so as to permit the Court to exercise personal jurisdiction over defendants." *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008); *Federal Practice & Procedure* § 1353 ("The great weight of the case law is to the effect that the party on whose behalf service has been made has the burden of establishing its validity."). "The parties may submit affidavits and other documentary evidence for the Court's consideration, and plaintiff is entitled to the benefit of any factual doubt." *Fisher*, 531 F. Supp. at 1260.

A.      Did Plaintiff Effect Proper Service Upon Tulsa Juvenile Bureau?

Juvenile Bureau does not dispute that the Second Amended Complaint was timely served upon Judge Shallcross at the Tulsa County Courthouse.  Juvenile Bureau argues, however, that such service fails to comply with Federal Rule of Civil Procedure 4(j) ("Rule 4(j)").  Rule 4(j) provides: "A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:  (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."

1.      *Rule 4(j)(A) - Was Service Effected Upon Tulsa Juvenile Bureau's Chief Executive Officer?*

Tulsa Juvenile Bureau argues that Wolfe, as director, is the chief executive officer for purposes of Rule 4(j)(A), and the Court agrees.  Oklahoma law provides that "*[t]he chief administrative officer* of the juvenile bureau shall be a *director*, who shall be subject to the direction and supervision of the *judge of the Juvenile Divisio*n, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District within budgetary limitations."  Okla. Stat. tit. 10A, § 2-4-102 (emphasis added).[13]  Thus, the "director" of a juvenile bureau serves as a juvenile bureau's "chief administrative officer," while the federal rule directs service upon the "chief executive officer."  However, the Court finds that the director/chief administrative officer is the closest approximation to a "chief executive officer" in the Oklahoma statutory scheme governing juvenile bureaus.  Therefore, the proper individual upon which to effect service for a juvenile

---

[13]  The cited provision is current law, rather than the version in place at the time Plaintiff attempted service.  However, there have been no relevant changes to this language since the time Plaintiff attempted service.

14

bureau, for purposes of Rule 4(j)(A), is the director.  At relevant times, the director of Tulsa Juvenile

Bureau was Wolfe, whose office is located at the Gilcrease address.  By serving Judge Shallcross

at the Tulsa County Courthouse address, Plaintiff failed to effect service in compliance with Rule

4(j)(A).[14]

2.    *Rule 4(j)(B) - Was Service Effected in Compliance with Oklahoma Law?*

Oklahoma law provides that, unless otherwise designated by statute, service may be made

upon "a state, county, school district, public trust or municipal corporation or other governmental

organization thereof subject to suit, by delivering a copy of the summons and of the petition to the

. . . chief executive officer or a clerk, secretary, or other official whose duty it is to maintain the

official records of the organization."  For reasons explained above in relation to Rule 4(j)(A), the

Court finds that Plaintiff failed to effect service upon Juvenile Bureau's "chief executive officer."

The Court further finds that Judge Shallcross, who no longer served as "judge of the Juvenile

Division" or had any official responsibilities in relation to Juvenile Bureau, cannot be considered

a "clerk, secretary, or other official whose duty it is to maintain the official records" of Juvenile

Bureau.  Therefore, Plaintiff also failed to effect service in compliance with Rule 4(j)(B).

B.    <u>Is Plaintiff Entitled to Mandatory or Permissive Extension?</u>

Plaintiff failed to effect proper service of the Second Amended Complaint on Tulsa Juvenile

Bureau within the 120-day time limit in Federal Rule of Civil Procedure 4(m) ("Rule 4(m)").  The

---

[14]  The Court finds that the "judge of the Juvenile Division, who directs and supervises the director, "is not the chief executive officer of a juvenile bureau.  Even assuming, however, that the "judge of the Juvenile Division" is the chief executive officer, Plaintiff still failed to effect proper service on the "judge of the Juvenile Division" in this case.  The record reflects that, on the date service was delivered on September 4, 2007, Judge Shallcross had been replaced by Judge Doris Fransein as the "judge of the Juvenile Division" in Tulsa County.

next question is whether Plaintiff is entitled to a mandatory or permissive extension of this deadline. The Court's "preliminary inquiry . . . is whether the plaintiff has shown good cause for the failure to timely effect service." *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). If so, a court must extend the time for service. *See* Fed. R. Civ. P. 4(m) (stating that "if the plaintiff shows good cause for the failure, the court shall extend the time for service"). Plaintiff has not argued or attempted to show "good cause" for her failure to timely effect service of the Second Amended Complaint; instead, Plaintiff merely contended that service upon Judge Shallcross was proper. (*See* Pl.'s Resp. to Mot. to Dismiss 7-9.) In absence of arguments in support of good cause for Plaintiff's failure to timely effect service, the Court finds that a mandatory extension is not warranted.

"If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted." *Espinoza*, 52 F.3d at 841. Factors to consider in deciding whether to grant a permissive extension include: (1) whether the statute of limitations for claims against the unserved defendant has expired; *see id.* at 842; (2) the complexity of the relevant requirements under Rule 4(j), particularly when a plaintiff is proceeding *pro se*, *see id.* at 842; (3) whether plaintiff has made a good-faith effort to attempt service; *see Barger v. Jones*, No. 09-99-W, 2009 WL 2488972, at * 2 (W.D. Okla. Aug. 13, 2009); (4) whether a defendant attempted to avoid service, *see id.*; (5) whether defendant had actual notice of the claims against it, *see Spiess v. Meyers*, 483 F. Supp. 2d 1082, 1097 (D. Kan. 2007); and (6) whether a defendant has shown actual prejudice caused by the delay in service, *see id.* at 1098. *See generally Mehus v. Emporia State Univ.*, 295 F. Supp. 2d 1258, 1273 (D. Kan. 2004) (listing relevant factors as "whether defendant would have been prejudiced by an extension, whether it was on notice of the lawsuit, and whether the applicable statute of limitations would bar the refiled action").

16

First, Tulsa Juvenile Bureau admits that, were the Court to dismiss claims against it for improper service, such claims would be barred by the relevant statute of limitations. Therefore, this factor weighs in favor of granting an extension.

Second, with respect to the complexity of the Rule 4(j) requirements, the Court finds this factor weighs in favor of granting an extension. As made clear by the dispositive motion briefing, Tulsa County, State, and Tulsa Juvenile Bureau have been unclear as to the legal entity responsible for wrongful employment actions taken by Tulsa Juvenile Bureau. This confusion is evidenced by the question posed in the 11/3/08 AG Opinion. Indeed, Tulsa Juvenile Bureau has argued in this very motion that Tulsa County, and not Tulsa Juvenile Bureau, is the proper-party defendant. Thus, there is at least some degree of complexity in determining Tulsa Juvenile Bureau's legal status as a defendant in an employment-law action, which necessarily impacts the proper party to sue. In addition, Oklahoma law does not clearly designate a "chief executive officer" of a juvenile bureau. Prior to this Court's ruling in Part III.A.1 above, there was at least some degree of "complexity" regarding who, between the director and the judge of the juvenile division (both of whom are mentioned in the relevant statute), should be considered the "chief executive officer" for purposes of Rule 4(j). It is possible that Plaintiff's decision to attempt service upon Tulsa Juvenile Bureau via Judge Shallcross at the Tulsa County Courthouse, rather than Wolfe at the Gilcrease address, was a deliberate choice (alebit a legally incorrect choice) rather than a clerical mistake.[15] A misunderstanding of complex service law generally weighs in favor of granting the extension. *See, e.g., Mehus*, 295 F. Supp. at 1273  (granting permissive extension where, *inter alia*, "Plaintiff's

---

[15] Plaintiff failed to offer any explanation for serving the Second Amended Complaint upon Judge Shallcross rather than Wolfe. The Court is left to speculate as to Plaintiff's reasons for this change in the service addressee.

decision to serve Governor Sebelius, rather than President Schallenkamp, the Attorney General or his assistant, apparently resulted from a misunderstanding of the relevant case law").

Tulsa Juvenile Bureau contends that any complexity in the law is irrelevant because Plaintiff was represented by counsel and served the original Complaint upon the legally proper individual (Wolfe), thereby indicating that "Plaintiff obviously knew how to serve the [Tulsa] Juvenile Bureau upon filing her Second Amended Complaint."  (Mot. to Dismiss 8.)  This would be a more persuasive argument had Tulsa Juvenile Bureau answered or entered an appearance prior to April 10, 2007, when Plaintiff voluntarily amended her complaint to replace Tulsa Juvenile Bureau with Tulsa County.  If counsel had entered an appearance on behalf of Tulsa Juvenile Bureau at any point in this lawsuit, indicating that Plaintiff's first attempt at service was indeed successful, the Court would agree with Tulsa Juvenile Bureau that any "complexity" in the service requirements would be irrelevant.  However, as it stands, Tulsa Juvenile Bureau did not timely file a responsive pleading to either the original Complaint or the Second Amended Complaint, and Plaintiff had no reason to believe her first attempt at service was any more or less successful than the second.  Thus, Plaintiff's original service upon Wolfe – who this Court has ultimately deemed the correct individual to serve – is of little significance to the "complexity" analysis.

The third factor – whether Plaintiff made good-faith attempts at service – weighs against granting an extension because, once it became clear that Tulsa Juvenile Bureau was not participating in the litigation, Plaintiff did not make any additional attempts to effect service.  Clearly, Plaintiff had other viable service options – namely, serving Wolfe as she had done with the original Complaint.  Instead, Plaintiff did nothing and allowed the case to proceed for over a year in Tulsa Juvenile Bureau's absence.  Plaintiff also waited, for inexplicable reasons, over a year after service

18

was allegedly effected upon Judge Shallcross on September 4, 2007 before filing proof of service with the Court.  When Plaintiff finally did file a proof of service, such proof did not even contain a date stamp.

As to the fourth factor – whether Tulsa Juvenile Bureau deliberately avoided service – Plaintiff has not presented any evidence or argument that Juvenile Bureau attempted to dodge or deliberately ignore service.  Such a finding would imply that Judge Shallcross or members of her staff were aware of the claims against Tulsa Juvenile Bureau but purposefully did not inform Tulsa Juvenile Bureau of such claims.  Given the lack of argument or evidence presented by Plaintiff on this point, the Court will not indulge such an implication.  Therefore, this factor weighs against granting an extension.

In the Court's view, the record is unclear as to when Tulsa Juvenile Bureau first received actual notice of the Second Amended Complaint.  Tulsa Juvenile Bureau does not declare a date upon which it received actual notice of the lawsuit or specify what event caused it to enter its appearance on November 21, 2008.[16]  Regarding actual notice, Tulsa Juvenile Bureau vaguely states:

> Having been released from the case on April 10, 2007 . . . and then having never been properly served with a copy of the Second Amended Complaint, the [Tulsa] Juvenile Bureau had no notice of its need to enter an appearance . . . . Having not been served with a copy of Plaintiff's Second Amended Complaint . . . the Juvenile Bureau neither entered an appearance . . . nor received copies of any related filings. . . .

---

[16] As explained in detail above, amendments to certain Oklahoma statutes governing juvenile bureaus became effective November 1, 2008.  In addition, the Oklahoma Attorney General issued a lengthy opinion regarding Oklahoma juvenile bureaus' relationships with county and state governments on November 3, 2008.  These developments in Oklahoma law were cited extensively in Tulsa Juvenile Bureau's Motion to Dismiss.

19

(Tulsa Juvenile Bureau's Reply in Support of Mot. to Dismiss 9.)  Thus, Tulsa Juvenile Bureau has at least implied that it did not have actual notice of the lawsuit until sometime shortly prior to its entry of appearance on November 21, 2008.  It filed its motion to dismiss five days after the entry of appearance.  Given Tulsa Juvenile Bureau's failure to specify an event that provided it with actual notice or otherwise explain what finally caused it to enter an appearance in the litigation, the Court finds the fifth factor to be fairly neutral.

The sixth factor weighs against granting a permissive extension because Tulsa Juvenile Bureau has shown a significant degree of prejudice resulting from the delay in service.  Tulsa Juvenile Bureau argues:

> Having been excluded from this case for more than a year, the [Tulsa] Juvenile Bureau would be forced to expend an enormous amount of time and resources attempting to catch up with the remaining parties in this case.  Indeed, the entire discovery process would need to be repeated, as the [Tulsa] Juvenile Bureau has had no opportunity to examine documents and witnesses or participate in depositions.  Such duplicative effort would harm not just the [Tulsa] Juvenile Bureau, but also the other defendants, each of whom, through no fault of their own, would essentially be required to relitigate this case.

(Mot. to Dismiss 9.)  The Court agrees.  This case has been pending over two years. The discovery deadline and the dispositive motion deadline have expired, and dispositive motions are pending. This case presents complex issues regarding the employment relationship between Plaintiff, Tulsa Juvenile Bureau, and Tulsa County.  Adding Tulsa Juvenile Bureau at this late stage of the proceeding may change Plaintiff and Tulsa County's legal strategy and arguments.  In addition, granting a permissive extension would likely result in further delay of this litigation.

This case presents a difficult intersection of factors weighing for and against a permissive extension, and the Court has struggled to balance all factors and reach a fair and reasonable outcome.  The Court concludes that a permissive extension is in the interest of justice and that any

resulting prejudice to Defendants or disruption of the Court's docket are necessary under the circumstances.  If the Court fails to grant a permissive extension, Plaintiff will lose her right to sue Tulsa Juvenile Bureau, which, based on the Court's ruling above, has capacity to be sued under Oklahoma law.  Further, if Tulsa County succeeds in convincing this Court or a jury that it is not Plaintiff's "employer" for purposes of Title VII, (*see* Tulsa County's Mot. for Summ. J., Doc. 71), Plaintiff may be left without a remedy against any defendant for her alleged wrongful termination.[17] In the Court's view, these considerations outweigh the others.[18]  In addition, it appears this case may present unsettled questions of law involving Tulsa County and Tulsa Juvenile Bureau in relation to Title VII liability.  As already evidenced by the "response" brief it filed objecting to Tulsa County's motion for summary judgment, Tulsa Juvenile Bureau's position in this case likely conflicts with Tulsa County's.  In deciding the legal questions presented, the Court and/or jury will benefit from Tulsa Juvenile Bureau's presence.  Although it is a close case, the Court will err on the side of allowing Plaintiff to pursue her claims against all desired defendants.

In sum, with regard to service, the Court concludes: (1) Plaintiff's service of the Second Amended Complaint upon Judge Shallcross did not constitute proper service upon Juvenile Bureau pursuant to Rule 4(j)(A) or (B); (2) Plaintiff has not shown good cause for a mandatory extension;

---

[17] Tulsa County has argued, in its pending motion for summary judgment, that it is not the "employer" of Plaintiff for purposes of Title VII liability.  Tulsa Juvenile Bureau refutes this assertion.  (*See* Tulsa Juvenile Bureau's Resp. to Tulsa County's Mot. for Summ. J., Doc. 83.)

[18] Clearly, Plaintiff should have more actively pursued her claim against Tulsa Juvenile Bureau and made additional attempts to effect service or at least provide actual notice of the claims. At the same time, however, Tulsa Juvenile Bureau admitted that it received proper service of the original Complaint and yet failed to offer any explanation for its failure to respond or appear.  Such an appearance could have assisted Plaintiff in ascertaining the proper party to serve the second time around and could have prevented Plaintiff from changing the relevant service address.

and (3) the Court, in its discretion, grants Plaintiff a permissive extension to effect service upon Tulsa Juvenile Bureau by serving the "director" at the Gilcrease address no later than October 14, 2009.  Following Tulsa Juvenile Bureau's filing of an answer or responsive pleading to the Second Amended Complaint, the Court will determine how best to proceed in light of Tulsa Juvenile Bureau's late entry into the case.

The Motion to Dismiss by Juvenile Bureau of the District Court of Tulsa County (Doc. 64) is DENIED.

**It is so ordered this 2nd day of October, 2009.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**